1  GEORGE G. WEICKHARDT (SBN 58586)
   WENDY C. KROG (SBN 257010)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   201 Spear Street, Suite 1000
3  San Francisco, CA 94105
   Telephone:    (415) 543-4800
4  Facsimile:    (415) 972-6301
   Email:        gweickhardt@rmkb.com
5                wkrog@rmkb.com

6  Attorneys for Defendants
   CHASE BANK USA, N.A. and
7  VALENTINE & KEBARTAS, INC.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | GRACIA P. LAPID,                          | CASE NO. 08 CV 02565 WHA

12 |              Plaintiff,                   | **DEFENDANT CHASE BANK USA, N.A.'S OPPOSITION TO MOTION TO STRIKE ITS COUNTERCLAIM**

13 |     v.                                    |

14 | CHASE BANK USA, N.A.; VALENTINE           | Date:   August 21, 2008
   | & KEBARTAS, INC.; 1 THROUGH 10,           | Time:   8:00 a.m.
15 |                                           | Place:  Room 9, 19th Floor
   |              Defendants.                  | Judge:  Hon. William H. Alsup
16 |

17 | CHASE BANK USA, N.A.,

18 |              Counter-claimant,

19 |     v.

20 | GRACIA P. LAPID,

21 |              Counter-defendant.

22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## I. INTRODUCTION

Plaintiff Gracia P. Lapid has moved to dismiss the counterclaim filed against her by defendant and counterclaimant Chase Bank USA, N.A. The complaint alleges purported violations of the California state and federal Fair Debt Collection Practices Acts with respect to efforts to collect a debt owing on a credit card account issued by Chase. The counterclaim seeks the balance due on the account. Plaintiff argues that the counterclaim is neither compulsory nor permissive and that, even if it is permissive, the Court should decline to exercise supplemental jurisdiction for policy reasons.

In fact, the authorities upon which plaintiff relies hold that where the complaint alleges federal FDCPA violations, a counterclaim to collect the account balance is a permissive counterclaim over which the Court does have supplementary jurisdiction. Plaintiff cites district court cases where the court declined to exercise such supplementary jurisdiction for a policy reason, the purported "chilling effect" on consumer claims. See, e.g., *Leatherwood v. Universal Bus. Service*, 115 F.R.D. 48 (W.D.N.Y. 1987). Circuit courts considering the issue in similar circumstances have rejected that policy reason on the ground that dismissing a counterclaim for an admittedly due account balance would discourage debtors from paying their lawful debts and create inefficiency and unfairness in the adjudication of disputes concerning consumer debt. *Channell v. Citicorp Nat'l Services, Inc.*, 89 F.3d 379 (7th Cir. 1996); *Plant v. Blazer Fin. Services of Ga.*, 598 F.2d 1357 (5th Cir. 1979); see also, *Padilla v. Clovis & Roche, Inc.*, 207 U.S. Dist. LEXIS 88293 (N.D.N.Y. 2007). The present case is distinguishable from *Leatherwood* and similar to the latter cases for the reason that plaintiff's complaint admits owing the moneys due on the credit card account. Moreover, forcing Chase to bring the claim that forms the basis of its admittedly valid counterclaim in a separate action in state court would be inefficient and wasteful. The present case is also distinguishable from *Leatherwood* because in the present case there is both a federal and state FDCPA claim. Under California law, where a state FDCPA claim is brought, a counterclaim for the account balance is compulsory.

## II. ALLEGATIONS OF THE PLEADINGS

The complaint acknowledges in paragraph 14 that plaintiff was issued a credit card by

1  Chase and that she in fact used the card to purchase goods, but that she was unable to make
2  payment on the account "because of financial setbacks." (¶¶ 14-16) These allegations are
3  tantamount to an admission that she owes a lawful debt to Chase.

4      She then alleges that she retained an attorney, Irving Berg, who sent a representation letter
5  to Chase demanding that Chase cease and desist from all communications with plaintiff. It is then
6  alleged that approximately 12 days after this letter was sent, defendant Valentine (a collection
7  agency engaged by Chase) sent a letter to plaintiff demanding payment. Paragraph 25 alleges that
8  this communication violated both the state and federal FDCPA.

9      The letter that was supposedly sent to Chase by Mr. Berg is attached as Exhibit A to the
10  complaint. <u>In the letter the plaintiff's name is misspelled, and the letter only gives the last four
11  digits of the sixteen-digit account number</u>, thus making it difficult for Chase to locate the account
12  in question.[1]

13      The counterclaim concerns the same debt that arose from the credit card account, and, as
14  admitted in the complaint, alleges that the debt is unpaid and states claims for breach of contract
15  and money had and received. The counterclaim alleges supplemental jurisdiction on the ground
16  that the counterclaim is compulsory.

### III. CIRCUIT COURTS HAVE REJECTED THE REASONING IN THE <u>LEATHERWOOD</u> LINE OF CASES

19      In *Leatherwood v. Universal Business Service*, 115 F.R.D. 48 (W.D.N.Y. 1987), plaintiff
20  had brought an action alleging violations of only the federal FDCPA, and the defendant filed
21  counterclaims seeking payment of the underlying debt. The court held that the counterclaim was
22  not compulsory under Federal Rule 13(a). The court conceded that the claim and counterclaim
23  arose from the same underlying transaction, but stated that the complaint arose from alleged
24  collection practices which were not involved in the counterclaim. Finding that the counterclaim
25  was not compulsory, the court dismissed it and then went on to note that allowing counterclaims

---

[1] This is not the only case pending in this Court where representation letters sent by Mr. Berg to Chase have misspelled his client's name and failed to give the complete account number. See *Ticzon v. Chase.*, Action No. 08cv02640 PJH, of which this Court is asked to take judicial notice.

1  for the underlying debt in a federal FDCPA action might have a chilling effect on persons who
2  might otherwise bring FDCPA claims.
3     Plaintiff also cites *Sparrow v. Mazda American Credit*, 385 F. Supp. 2d 1063 (E.D. Cal.
4  2005), which similarly involved a complaint under the FDCPA and a counterclaim to collect the
5  underlying debt. Following *Leatherwood*, the *Sparrow* court found that the counterclaim was not
6  compulsory but nonetheless noted that the reasoning in *Leatherwood* seemed contrary to the
7  "logical relation test for compulsory counterclaims." *Id.* at 1068. Unlike *Leatherwood*, the
8  *Sparrow* court, however, went on to hold that the counterclaims were permissive counterclaims
9  because under the case-or-controversy test, because the counterclaims were "so related to the
10 claims in the action that [the] original jurisdiction that they formed part of the same case or
11 controversy under Article III of the United States Constitution." *Id.* at 1070. Having found the
12 counterclaims were permissive, the court therefore found it had supplemental jurisdiction over
13 them, but nonetheless proceeded to exercise its jurisdiction not to retain supplemental
14 jurisdiction, citing the "chilling effect" language in *Leatherwood*. For a similar result, see
15 *Campos v. Western Dental Services*, 404 F. Supp. 2d 1164 (N.D. Cal. 2005). However, other
16 district courts have rejected the "chilling effect" policy reason. See *Padilla v. Clovis & Roche,
17 Inc.*, 2007 U.S. Dist. LEXIS 88293 (N.D.N.Y. 2007) (finding that the very fact that the plaintiff
18 had brought her FDCPA claims demonstrated "fortitude in the adversary process," i.e., that the
19 chilling effect had been overcome).
20    Plaintiff neglects to point out that *Sparrow* held that the court <u>has supplemental
21 jurisdiction over a counterclaim to collect the debt and the issue presented here is thus whether
22 this Court should decline to exercise that jurisdiction under 28 U.S.C.§1367(c)</u>. That subdivision
23 provides that a court may decline to exercise supplemental jurisdiction if:
24        (1) the claim raises a novel or complex issue of State law,
25        (2) the claim substantially predominates over the claim or
26        claims over which the district court has original jurisdiction,
27        (3) the district court has dismissed all claims over which it
          has original jurisdiction, or
28        (4) in exceptional circumstances, there are other compelling

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

reasons for declining jurisdiction.

Considerations (1)-(3) plainly do not apply here. The counterclaim is simple (and in fact its basic allegation, that plaintiff owes a valid debt, is admitted). Because it is simple and essentially uncontested, the counterclaim would also not predominate over the complaint. Finally the district court still has before it the claim over which it has original jurisdiction. The only issue is whether the "chilling effect" consideration is a compelling reason for declining jurisdiction.

Rejecting the "chilling effect" analysis, circuit courts have found compelling policy reasons to <u>retain</u> supplemental jurisdiction in analogous situations. For example, in *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir. 1996), the complaint alleged a claim under the Consumer Leasing Act, 15 U.S.C. §§ 1667 et seq., asserting that the method of calculating interest on leases was improper. A counterclaim was brought to collect amounts due on the leases. The Court of Appeals vacated the trial judges order dismissing the counterclaim. Plaintiffs argued that entertaining a counterclaim on the lease would discourage the enforcement of the Consumer Leasing Act. The court rejected that argument, stating:

> In making this argument, counsel appears to assume that the two options are: (a) lessees recover under the Act and never pay their debts under the lease; and (b) lessees recover under the Act and are ordered in the counterclaim to pay their debts. Option (a) certainly does more to encourage suits that enforce the Act but the inducement comes entirely from avoidance of the debts under the leases, which is not the inducement Congress established in the Act. <u>Plaintiff cannot expect a court to tolerate evasion of lawful debts, or to use the fact that case-by-case enforcement is expensive to lessors (perhaps too expensive to justify independent legal action) to bestow on lessees a legal right to avoid collection</u>. Option (a) is out of bounds.

*Id.* at 386. [Emphasis added.]. The Court went on to consider other options, concluded that Option (b) was as good as any other, but left it to the trial court to choose between them. Significantly, the Court considered <u>both</u> encouragement to enforce the Act and the extent to which each option would impede or complicate the payment of lawful debts.

The *Channell* court went on to observe in considering whether the counterclaim would predominate that, "It may turn out that entry of judgment on the counterclaim requires little more

than a mechanical calculation; if so, section 1367(c) would not justify relinquishing jurisdiction." *Id.* at 387. That observation is particularly apt in the present case because here plaintiff has already admitted in the complaint that the credit card account at issue was issued to her, that she did use it to purchase goods and that she was unable to make payments only because of financial setbacks. In short, she has admitted that she owes the debt in question. Thus, adjudication of the counterclaim would not predominate over the complaint, but would involve little more than placing before the Court the documentary evidence of the debt that plaintiff admits that she owes. Just as in *Channell*, the Court here should not tolerate the evasion of a lawful debt.

Ultimately, the *Channell* court found that there was supplemental jurisdiction and remanded the matter to the trial court to give the trial judge an opportunity to exercise the discretion that section 1367(c) confers.

The Court must also consider that the interests of fairness, efficiency and economy in litigating closely-related claims weigh heavily in favor of exercising supplemental jurisdiction. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), values of "economy, convenience, fairness and comity" weighed in favor of keeping both the complaint and counterclaim together in one action. The same is true here because to force Chase to bring the collection action in a different forum would undermine the strong public policy in favor of people paying their lawful debts, and at the same time ignore the interests of economy and efficiency in resolving disputes.

Likewise, in *Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357 (5th Cir. 1979), *reh'g den.*, 605 F.2d 555 (5th Cir. 1979), an action on the underlying debt in default was held to be a compulsory counterclaim that must be asserted by the creditor in response to a suit by the debtor under the Truth In Lending Act for failure to make proper disclosures. The court held that there was "a logical interrelationship" between the claim and the counterclaim. The court relied on the language of Rule 13(a) that a counterclaim is compulsory if it "arises out of the transaction or occurrence" that is the subject matter of the plaintiff's claim. In making this determination, the court said the key was whether there was a "logical relation" between the claim and the counterclaim. While one could certainly say that the TILA claim arose out of the disclosures and the counterclaim arose out of nonpayment of the loan, both claims nonetheless

1    arose out of the same transaction or series of transactions. More germane to the present
2    discussion are the various <u>policy reasons</u> that the *Plant* court found to hear both claims in the
3    same action: The court stated as follows:

> [T]he resolution of the state law issues imposes little burden in fact
> because a judge determining the Truth in Lending claim must be
> well-versed in state consumer credit transaction law and the only
> additional finding to be made in connection with a counterclaim is
> how much the plaintiff has paid. [Citation]
>
> We add to these arguments the observation that one of the purposes
> of the compulsory counterclaim rule is to provide complete relief to
> the defendant who has been brought involuntarily into the federal
> court. [Citation] Absent the opportunity to bring a counterclaim,
> this party could be forced to satisfy the debtor's Truth in Lending
> claim without any assurance that his claims against the defaulting
> debtor arising from the same transaction will be taken into account
> or even that the funds he has been required to pay will still be
> available should he obtain a state court judgment in excess of the
> judgment on the Truth in Lending claim. . . .
>
> To permit the debtor to recover from the creditor without taking the
> original loan into account would be a serious departure from the
> evenhanded treatment afforded both parties under the Act. Truth in
> Lending claims can be brought in either state or federal court. To
> the extent this dual jurisdiction was intended to permit litigation of
> Truth in Lending claims and actions on the debt, it reflects a
> purpose that the debt claim and the Truth in Lending claims be
> handled together. To the extent it was intended to relieve federal
> courts of any of this litigation, the purpose would be frustrated by
> providing a sanctuary from the creditor's claims in one jurisdiction
> but not the other. State courts would always have jurisdiction of a
> creditor's counterclaim. Had Congress intended to insulate
> recovery in Truth in Lending actions in federal court from the
> counterclaims of the creditors, of which it surely was aware, it
> could have easily done so.

Id. at 1364.

The same observations apply here. Absent the opportunity to prosecute its counterclaim here, Chase may be forced to satisfy the FDCPA claim in full, with no assurance that the debtor would have sufficient funds to satisfy a judgment in a separate state court action for the underlying debt. Were this Court to retain jurisdiction, Chase would at least have the opportunity to offset its debt claim against whatever plaintiff may recover on her complaint.

*Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir. 1997), cited by plaintiff, is distinguishable. There plaintiff's default had been taken on a collection action in an Illinois state

court. The Plaintiff then filed a complaint under RICO and the Federal FDCPA in federal court. The court decided that the FDCPA claim was not barred by res judicata for failure to bring it as a counterclaim in state court. The court made it clear that it was applying Illinois law as to res judicata and whether the FDCPA claim was a compulsory counterclaim. *Id.* at 955-958.

This Court should adopt the reasoning in *Channell* and *Plant*, *supra*, to exercise supplemental jurisdiction. There are no compelling reasons not to because, the plaintiff here has admitted that she owes the debt that is the subject of the counterclaim, and that it is only because of financial difficulties that she was unable to pay it. Because she does not contest the validity of the debt, the counterclaim may be proved almost exclusively from the admissions in the complaint, and it would therefore be wasteful and inefficient to force Chase to bring a separate action for the collection of the account balance. The reasoning from the TILA (*Plant*) and Consumer Leasing Act (CLA) cases (*Channell*) is equally valid here. TILA, the CLA and the federal FDCPA were all part of the contemporaneously enacted Consumer Credit Act (15 U.S.C. § 1600 et seq.), which had as its goal the protection of consumers in credit transactions. The complaints in the TILA and CLA cases likewise involve issues that go beyond the existence of the underlying debt pled in the counterclaim, but that factor did not dissuade the *Plant* and *Channel* courts from keeping the two claims in the same action. Because circuit courts have found no "chilling effect" of counterclaims in TILA and CLA cases, the same result should apply here. Thus, this Court should follow the reasoning in *Plant, and Channell* that declining to exercise jurisdiction over counterclaims seeking to collect admittedly valid debts would discourage the payment of valid debts and encourage more litigation under the Consumer Credit Act. Declining jurisdiction would also create inefficiency and wastefulness in adjudicating an admittedly valid collection claim. The key difference between the present case and the *Leatherwood, Sparrow* and *Campos* line of cases is that here plaintiff admits that she owes the debt that is the subject of the FDCPA claim.

///

///

///

## IV. THE COUNTERCLAIM IS COMPULSORY AS TO PLAINTIFF'S STATE FDCPA CLAIM

Another factor that cuts in favor of exercising supplemental jurisdiction here (and that was not discussed in the *Leatherwood* line of cases) is that plaintiff brings her FDCPA claim under both the state and federal acts. While, as noted above, some courts have ruled that a counterclaim for the underlying debt is not a compulsory counterclaim in a federal FDCPA action, the same is not true for a state FDCPA claim. The California compulsory counterclaim rule is stated in California Code of Civil Procedure section 426.30, which states that a counterclaim is compulsory if it involves "any related cause of action which (at the time of serving his answer to the complaint) [the defendant] has against the plaintiff." In other words, the state test is that, to be compulsory, the counterclaim only need be a related cause of action.

"Related cause of action" is defined as "a cause of action which arises out of the same transaction, occurrence, or *series of transactions or occurrences* as the cause of action which the plaintiff alleges in his complaint." [Emphasis added.] C.C.P. § 426.10(c). The term "related cause of action" has been interpreted very broadly. Thus, for example, where an action was brought to recover freight charges for a shipment, a counterclaim for damage to the shipment was compulsory. *Payne v. Clarke*, 271 F. 525 (S.D. Cal. 1921). Likewise, in *Currie Medical Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774 (1982), an action based on termination of a contract was found to be a compulsory counterclaim to a trademark action involving the same party and contract. In *Western Décor & Furnishings Industries, Inc. v. Bank of America*, 91 Cal. App. 3d 293 (1979), a debtor brought a complaint against a secured party who allegedly improperly collected accounts receivable of the debtor. A cross-complaint of the secured party to recover the balance due from the debtor was deemed a compulsory counterclaim. *Davis v. Unifund CCR Partners*, 2007 U.S. Dist. LEXIS 44606 (N.D. Cal. 2007), cited by plaintiff, is an inexplicable and incorrect departure from this broad standard. In deciding that an FDCPA action was not a compulsory counterclaim to a previously filed state court action to collect the debt in question, Judge Illston cited only federal cases dealing with the much narrower federal test, versus the broader test under C.C.P. § 426.10(c) applied in the above-cited California cases.

1  Moreover, Judge Illston was not dealing with the present situation where an FDCPA complaint
2  admits that the debt is valid, and the question is whether the Court should retain supplemental
3  jurisdiction of a permissive counterclaim. For a case contra to *Davis*, see *Tagayun v. Citibank*,
4  2006 U.S. Dist. LEXIS 38085 (D.N.J. 2006).

5  Because the counterclaim in the instant case is a compulsory counterclaim as to the state
6  FDCPA claim, plaintiff would be free to argue in a separate state court action to collect the debt,
7  that the claim is barred for failure to have brought it as a compulsory counterclaim in the present
8  action. Therefore, this Court must allow Chase to pursue its counterclaim as part of this action or
9  Chase will be without a remedy as a result of plaintiff's admitted breach of contract to pay the
10 debt as promised to Chase.

## V. CONCLUSION

For the reasons stated above, the Court should deny plaintiff's motion to strike the counterclaim. The Court does have supplemental jurisdiction over the counterclaim and should exercise that jurisdiction for the reasons stated above. Plaintiff has in essence already admitted liability for the sums sought in the counterclaim in her own complaint and to force Chase to litigate that liability in a separate lawsuit in state court would be wasteful and moreover expose Chase to the argument that under state law the collection action is a compulsory counterclaim to the state FDCPA claim. Plaintiff's admission of liability for the debt that is the subject of both the complaint and counterclaim and her pleading of a state FDCPA claim are a key facts that distinguishes this case from *Leatherwood*, *Sparrow*, *Campos* and *Davis*.

Dated: July 31, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By:/s/ George G. Weickhardt
GEORGE G. WEICKHARDT
WENDY C. KROG
Attorneys for Defendant
CHASE BANK USA, N.A.

| 1 | CASE NAME: | *Lapid v. Chase Bank USA, N.A., et al.* |
|---|---|---|
| 2 | ACTION NO.: | CV 08 2565 EMC |

### PROOF OF SERVICE

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is 201 Spear Street, Suite 1000, San Francisco, CA 94105.

3. On July 31, 2008, I served the following documents:

**DEFENDANT CHASE BANK USA, N.A.'S OPPOSITION TO MOTION TO STRIKE ITS COUNTERCLAIM**

4. I served the documents on the persons at the address below (along with their fax numbers and/or email addresses if service was by fax or email):

*Attorneys for plaintiff*
Irving L. Berg
The Berg Law Group
145 Town Center, PMB 493
Corte Madera, CA 94925
Tel: (415) 924-0742
Fax: (415) 891-8208
E-mail: irvberg@comcast.net

5. I served the documents by the following means:

    a. ☒ By CM/ECF electronic delivery in accordance with the registered case participants and in accordance with the procedures set forth in the Court's website at www.ecf.cand.uscourts.gov.

    b. ☐ By United States mail: I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses specified in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    c. ☐ By overnight delivery: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 31, 2008

| Marrie Bernstine | /s/ Marrie Bernstine |
|---|---|
| Type Name | Signature |